# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABC Corporation ) | |
| ) | Case No. 1:20-cv-6173 |
| v. ) | |
| ) | Judge: Hon. Marvin E. Aspen |
| THE PARTNERSHIPS and ) | |
| UNINCORPORATED ASSOCIATIONS ) | Magistrate: Hon. Jeffrey Cummings |
| Hon. IDENTIFIED ON SCHEDULE "A" ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff ABC Corporation d/b/a Good Smile Company, Inc. ("Good Smile"), submits the following memorandum in support of their Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendant Does, as identified on Schedule A of the Complaint (collectively, the "Defendants"), who have not been dismissed, in their action for trademark infringement, counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

### STATEMENT OF FACTS

Good Smile is a Japanese based manufacturer of toys and collectables. One of Plantiff's best-selling lines of collectable figures is the NENDOROID figures, which are based on literary, music, movie, and entertainment characters.

Good Smile holds U.S. Trademark Registrations for NENDOROID, NENDOROID EZ, NENDOROID-SERIES, and GOOD SMILE COMPANY marks, U.S. Reg. Nos. 4939118, 5393702, 4303251, 4939117, and 4340551 (collectively, the "Mark" or "Marks") which have been used exclusively and continuously by Good Smile since at least as early as 2006. *See*

Declaration of Kantaro Iwasa at ¶ 4. The mark is displayed prominently on Plaintiff's products. Good Smile has expended considerable resources advertising, marketing and promoting the NENDOROID mark, and these efforts have resulted in substantial sales of Good Smile products, as well as invaluable consumer goodwill. *Id.* at ¶ 4-8.

The primary way in which Defendants advertise the sale of Counterfeit Products on the infringing websites is by displaying the NENDOROID trademark and often stealing Plaintiff's original images – many of which are protected by copyright – that Plaintiff uses to market genuine NENDOROID Products. Iwasa Decl. at ¶¶ 11-13. After reviewing the Counterfeit Products advertised for sale on the Infringing Webstores, Plaintiff confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Illinois. *Id*. Plaintiff also concluded that the Infringing Webstores are selling Counterfeit Product based on a visual inspection of the products as they appear on the Infringing Websites, the price at which the Counterfeit Products are being offered for sale, and because Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the NENDOROID mark or copyright images for any reason. *Id*. Defendants facilitate sales of Counterfeit Products by designing the Infringing Webstore listings so that they appear to unknowing consumers to be authorized listings, outlet stores or wholesalers selling genuine NENDOROID Products and accept payment in U.S. Dollars. *Id*.

Due to nature of Defendants' illegal counterfeiting activities, monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill. Id at 15. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and goodwill

by acts of infringement. *Id*. Plaintiff's goodwill and reputation are irreparably damaged when the NENDOROID mark is used on goods not authorized, produced or manufactured by the Plaintiff. Id at 16-17 This leads to brand confidence being damaged, resulting in loss of future sales and market share. Id at 15. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable. *Id*. Defendants' illegal use of the NENDOROID mark further irreparably harms Plaintiff because counterfeiters like the Defendants take away Plaintiff's ability to control the nature and quality of Counterfeit Products. Id at 18. Loss of quality control over goods bearing the NENDOROID mark and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. Id at 14-15.

The extent to which Defendants have engaged in these tactics and the resultant instances of trademark infringement to promote the sale of Counterfeit Products is substantial, as the total value of Defendants' collective traffic to the Infringing Webstore is approximately 50,000 units and an estimated $2,000,000 in lost revenue. Id at 14.

Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities. Based on previous cases of Webstores that unlawfully use a brand owner's trademarks and copyrighted images to sell counterfeit products, when any advance notice of a lawsuit or request for injunctive relief is given to the owner or registrant of a Webstore involved in counterfeiting, the requested relief is rendered ineffective and meaningless, because counterfeiters operate as a proverbial "moving target," beyond the effective reach of rights owners, seeking to enforce their rights.

# ARGUMENT

## I. Jurisdiction and Venue Are Proper in This Court

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. See Complaint at ¶¶ 27; *uBID, Inc. v. GoDaddy Grp., Inc*. 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial Internet websites, each of the Defendants has targeted sales from Illinois residents by offering shipping to Illinois and, on information and belief, have sold Counterfeit Good Smile Products to residents of Illinois. As such, personal jurisdiction is proper since each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Good Smile substantial injury in the State of Illinois. See *True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket Nos. 42 and 43); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Oct. 14, 2011) (unpublished) (Docket Nos. 68 and 69).

## II. Plaintiff Has Met the Requirements for Entry of Default

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On October 16, 2020,Good Smile filed its Complaint alleging federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I), unfair competition and false designation of origin, 15 U.S.C. § 1125(a) (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 (Count III). (Docket Entry 1).

The Defendants were properly served on November 17, 2020. (Docket Entry 20). Despite having been served with process, the Defendants have ignored these proceedings and failed to plead or otherwise defend this action. (Gulbransen Declaration at ¶ 2). Upon information and belief, Defendants are not active-duty members of the U.S. armed forces. (Id. at ¶ 3). Accordingly, Good Smile asks for entry of default against Defendants.

## III. Plaintiff Has Met the Requirements for Entry of Default Judgment

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Good Smile served Defendants on November 17, 2020-. More than 21 days have passed since Defendants were served, and no answer or other responsive pleading has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and Plaintiff requests an award of damages as authorized by 15 U.S.C. § 1117(c)(1) for willful trademark counterfeiting against each of the Defendants in the amount of $250,000.00 per Defendant for use of counterfeit Good Smile trademarks on products sold through each of the Defendant's websites. Good Smile also seeks entry of a permanent injunction prohibiting Defendants from selling Counterfeit Good Smile Products, an Order that the domains used by Defendants to sell Counterfeit Good Smile Products be permanently transferred to Good Smile, and that all assets in Defendants' Amazon, PayPal, eBay, Wish, Payoneer, WorldFirst, Bill.com, Western Union, MoneyGram, etc. accounts, as well as any newly discovered assets, be transferred to Good Smile.

**A. Trademark Infringement and Counterfeiting**

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. See *Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001)).

Good Smile alleges in its Complaint that its NENDOROID Trademark is highly distinctive, that Defendants have knowledge of Plaintiff's rights in the NENDOROID Trademark, that Defendants are not authorized to use the NENDOROID Trademark, and that Defendants' use of the NENDOROID Trademarks causes a likelihood of confusion. Complaint at ¶¶ 33-37. Since the

Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in the Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Good Smile requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the NENDOROID Trademark.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) defendant used a false designation of origin in connection with products; (2) defendant's use of the products was in interstate commerce; and (3) there is a likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

PLAINTIFF alleges in its Complaint that Defendants' Counterfeit products are of the same nature and type and look identical to genuine PLAINTIFF products, but Defendants' Counterfeit PLAINTIFF products are not of the same quality as genuine PLAINTIFF products. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation or sponsorship of Defendants' Counterfeit Good Smile products with genuine PLAINTIFF products. Complaint at ¶¶ 38-43. Furthermore, by using a counterfeit of the NENDOROID Trademark on the Counterfeit Good Smile products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Good Smile products. Id. at ¶ 41. As such, Good Smile requests entry of judgment with respect to Count II for willful false designation of origin.

### C. Uniform Deceptive Trade Practice Act

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according

to the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994)infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). , 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Good Smile alleged in its Complaint that Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their products as those of Good Smile, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with Good Smile products, representing that their products have Good Smile approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. Complaint at ¶¶ 49-54. Good Smile, therefore, requests entry of judgment with respect to Count III of its Complaint for willful violation of the Illinois Uniform Deceptive Trade Practices Act.

## IV. PLAINTIFF IS ENTITED TO MONETARY AND INJUNCTIVE RELIEFT

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. See *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. Defendants' Counterfeiting Was Willful

As indicated in Plaintiff's Complaint, Defendants facilitated sales by using the NENDOROID mark on their website store listings, including utilization of photographs of genuine Good Smile products. Complaint at ¶¶ 35-36, 40-41. Use of the mark and the images make it difficult for consumers to distinguish such counterfeit products from genuine Good Smile products.

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id*. at 20. In the instant case, Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the NENDOROID Trademark as demonstrated by the fact that Defendants were directly copying Good Smile images.

Finally, District Courts have deemed counterfeiting willful when defendants default. *See True Religion Apparel, Inc., et al. v. Does 1-100*, No. 1:12-cv-9894 (N.D. Ill. Feb. 6, 2013) (unpublished) (Docket No. 43); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32).

## C. A High Statutory Damages Award Is Appropriate and Just

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). See *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. See *Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. See, e.g., *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket No. 32) (awarding $2,000,000 in statutory damages per defendant); *Coach, Inc. v. Does 1-573*,

No. 1:12-cv-1514 (N.D. Ill. Oct. 15, 2012) (unpublished) (Docket No. 27) (awarding $2,000,000 in statutory damages per defendant); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. June 29, 2012) (unpublished) (Docket No. 33) (awarding $2,000,000 in statutory damages per defendant). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Good Smilerespectfully requests the Court's entry of an award $100,000.00 per Defendant.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

### D. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Good Smile respectfully requests entry of a permanent injunction enjoining Defendants from infringing or otherwise violating Plaintiff's registered trademark rights in the NENDOROID Trademark, including at least all injunctive relief previously awarded by this Court to Good Smile in the TRO and preliminary injunction. Good Smile is also entitled to injunctive relief so it can quickly take action against any new websites that are identified, found to be linked to Defendants, and selling Counterfeit Good Smile products. See *Oakley, Inc. v. Does 1- 100*, No. 1:12-cv-9864 (N.D. Ill. Jan. 30, 2013) (unpublished) (Docket Nos. 31 and 32); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-

07970 (N.D. Ill. May 17, 2012) (unpublished) (Docket No. 67).

## CONCLUSION

Good Smile respectfully requests that the Court enter default and default judgment against each Defendant, award statutory damages as authorized by 15 U.S.C. § 1117(c)(1) for willful trademark counterfeiting against each of the Defendants in the amount of $250,000 per Defendant and enter a permanent injunction prohibiting Defendants from selling Counterfeit Good Smile Products, and that all assets in Defendants' Amazon, eBay, PayPal, Wish, Payoneer, WorldFirst, Bill.com, Western Union, MoneyGram, or other bank accounts, as well as any newly discovered assets, be transferred to Good Smile.

Dated this 8th day of February, 2021.

Respectfully submitted,

By:   s/David Gulbransen/
     David Gulbransen
     Attorney of Record

     David Gulbransen (#6296646)
     Law Office of David Gulbransen
     805 Lake Street, Suite 172
     Oak Park, IL 60302
     (312) 361-0825 p.
     (312) 873-4377 f.
     david@gulbransenlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, the PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT and MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT was filed with the CM/ECF system. The Defendant's will also be provided notice on February 8, 2021, via e-mail to the e-mail addresses the address supplied by the Defendants to their respective webstore hosts and via their webstores per the terms of the TRO.

By:   s/David Gulbransen/
      David Gulbransen
      Attorney of Record

      David Gulbransen (#6296646)
      Law Office of David Gulbransen
      805 Lake Street, Suite 172
      Oak Park, IL 60302
      (312) 361-0825 p.
      (312) 873-4377 f.
      david@gulbransenlaw.com